UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11099-RGS

HERAEUS KULZER LLC

v.

OMNI DENTAL SUPPLY

MEMORANDUM AND ORDER ON THE PARTIES' CROSS MOTIONS FOR
SUMMARY JUDGMENT

July 1, 2013

STEARNS, D.J.

Heraeus Kulzer LLC (Heraeus America) brought this lawsuit against Omni Dental Supply (Omni) seeking damages and injunctive relief for trademark infringement and unfair competition in violation of the Lanham Act. The Complaint sets out four Counts: violation of Lanham Act sections 32(1)(a) and 43(a)(1), 15 U.S.C. §§ 1114(1)(a) and 1125(a)(1) (Count I); illegal importation of merchandise in violation of Lanham Act section 42, 15 U.S.C. § 1124 (Count II); violation of section 526(a) of the Tariff Act of 1930, 19 U.S.C. § 1526 (Count III); and unfair competition in violation of Mass. Gen. Laws ch. 93A (Count IV). Now before the court are the parties' cross-motions for summary judgment on all claims. A hearing on the motions was held on June 6, 2013.

BACKGROUND

Heraeus Holding GmbH (Heraeus Holding) is a precious metals and technology conglomerate headquartered in Hanau, Germany. Heraeus Kulzer GmbH (Heraeus Germany) is a wholly-owned subsidiary of Heraeus Holding (also located in Hanau), and is a member of Heraeus Holding's Dental Group, one of seven product groups comprising Heraeus Holding's international subsidiaries. Heraeus Germany is one of the world's leading manufacturers of dental products. It sells these products in various countries through its Dental Group affiliates. The distributor for Heraeus Germany's dental products in the United States and Canada is Heraeus America, a sister company of Heraeus Germany headquartered in South Bend, Indiana. Heraeus America does not itself manufacture dental products, but advertises the Heraeus Germany products which it, in turn, distributes to dentists through authorized retailers.

Omni is a high volume discount retailer of dental supplies based in Brooklyn, New York. Among the many products it sells are those bearing the trademarks of Heraeus Germany. Omni, however, does not have a relationship with Heraeus Germany and is not authorized to sell its products directly. Instead, Omni acquires the Heraeus dental products from wholesalers who procure them in markets outside of the United States, principally China. Omni then sells these products directly to dentists over the phone and through its website, at prices usually lower than those offered by Heraeus America's authorized retailers.

In response to the unauthorized sale of Heraeus products in the U.S. market, Heraeus America entered into a formal Distribution Agreement with Heraeus Germany in July of 2010. The Agreement makes Heraeus America the exclusive distributor of Heraeus Germany dental products in the United States. The Agreement also grants Heraeus America "an exclusive right and license to use trademarks, trade names and other marks owned and/or used by Heraeus [Germany]" in connection with the promotion and sale of its dental products in the United States.

Heraeus America alleges that Omni is infringing four United States trademarks registered by Heraeus Germany: DURAFILL (Reg. No. 1,212,910); GLUMA (Reg. No. 1,402,838); CHARISMA (Reg. No. 1,816,611); and iBOND (Reg. No. 2,816,440) (collectively, the Heraeus marks), all in violation of the Lanham Act. Omni makes two arguments in response: that Heraeus America lacks standing to enforce the trademarks, and even if Heraeus America has standing, the Heraeus Germany dental products that Omni sells are genuine and therefore not infringing.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the

motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted). "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." *Id.* A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995).

DISCUSSION

**Lanham Act (Counts I and II)**

A. Standing

Omni challenges Heraeus America's standing to prosecute claims under the Lanham Act on behalf of Heraeus Germany, which Omni contends is the real party in interest, and thus an "indispensable" party under Fed. R. Civ. P. 19. According to Omni, because Heraeus America is not an assignee or exclusive licensee of the Heraeus marks, it is precluded from suing by the terms of the Lanham Act itself. The argument is flawed at the outset.

Heraeus America asserts claims under sections 32(1)(a), 42, and 43(a)(1) of the

Lanham Act. A section 43(a)(1) claim may be prosecuted "by any person who believes that he or she is or is likely to be damaged" by another's false representation or false designation of origin of a trademark. 15 U.S.C. § 1125(a). "[O]ne who may suffer adverse consequences from a violation of section 1125(a) has standing to sue regardless of whether he is the registrant of the trademark." *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 160 (1st Cir. 1977). Thus, as a preliminary matter, Omni's contention that Heraeus America is not the owner of the Heraeus marks is relevant to only two of the three Lanham Act actions.

It is true that to bring claims against Omni for trademark violations under section 32(1)(a) and section 42, Heraeus America must demonstrate that it is the "owner, assignee, or 'exclusive licensee'" of the Heraeus marks. *Id.* at 158. Although section 32(1)(a) provides that only the "registrant" of a trademark may seek relief, the First Circuit has construed the term "registrant" broadly to include assignees and exclusive licensees. *Id.* at 159 n.8. Within this broad category, standing is withheld only from nonexclusive licensees. *Id.* at 159. Omni contends that, despite the Distribution Agreement's grant of "an exclusive right and license" to Heraeus America to use the Heraeus marks, Heraeus America is actually a *non*exclusive licensee because the Agreement does not specifically give it the right to exclude Heraeus Germany itself from selling products directly in the United States, nor does the Agreement in so many

words grant Heraeus America the specific power to prosecute infringement claims.[1]

Any legal analysis of Heraeus America's status as a licensee must begin with the basic principle of contract law that unambiguous provisions of a contract are to be interpreted according to their plain language. *See, e.g.*, *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir. 1995). It is true that merely terming a license agreement "exclusive" is "not conclusive as to its legal effect" if the actual rights granted under the agreement are inconsistent with the characterization. *See Amgen, Inc. v. Chugai Pharm. Co., Ltd.*, 808 F. Supp. 894, 900 (D. Mass. 1992) (citation omitted). In the trademark context, an exclusive licensee is more often defined by what it is not, rather than what it is. It is clear that to earn the badge of exclusivity, a licensee must have the power to: (1) exclude importations and sales in its licensed territory by others, including the trademark owner; and (2) to enforce the licensed trademarks in court. *See Quabaug Rubber*, 567 F.2d at 159 (plaintiff was not an exclusive licensee where it lacked "the power to exclude importations and sales by [the

---

[1] Heraeus America offers a purported Amendment to the Distribution Agreement dated July 5, 2012, conferring on it the right to enforce the marks. I have not considered the Amendment for two reasons. First, it was created after the lawsuit was filed. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992) ("[S]tanding is to be determined as of the commencement of suit . . . ."). Second, Heraeus Germany is not a signatory to the Amendment. One party cannot, of course, unilaterally bind another to a contract.

trademark owner] and its foreign licensees in the United States."); *id.* at n.6 (in the patent arena, an "assignee [has] the right to sue infringers in [its] own name; but a 'mere licensee' [has] no standing to bring an infringement suit."). While nothing in the Distribution Agreement gives Heraeus America the explicit right to forbid Heraeus Germany from selling dental products in the United States, there is also no language in the Agreement that would prevent it from doing so. In light of the silence of the Agreement on the issue, the court looks to the conduct of the parties to the Agreement for guidance. *See Martino v. First Nat'l. Bank of Boston*, 361 Mass. 325, 332 (1972). In this regard, it is telling that there is no evidence whatsoever that Heraeus Germany or any of its foreign affiliates have ever attempted to circumvent Heraeus America by selling dental products directly in the United States. In other words, Heraeus Germany has always behaved consistently with the understanding that Heraeus America has the "exclusive right and license" to use its marks in the United States. Thus, Heraeus America is an exclusive licensee of the Heraeus marks.

  B. Gray Market Goods

  A gray market item, also known as a "parallel-import," is a "foreign-manufactured good, bearing a valid United States trademark, that is imported without the consent of the United States trademark holder." *K Mart Corp v. Cartier, Inc.*, 486 U.S. 281, 285 (1988). Almost a century ago in *Bourjois v. Katzel*, 260 U.S. 689

(1923), the Supreme Court adopted the "territoriality" principle of trademarks, which protects United States mark owners from the domestic sale of goods bearing authentic trademarks that are not intended to be sold in the United States. The protection is not absolute, however, as it is limited by the first sale doctrine. "Under the 'first sale' doctrine, the trademark protections of the Lanham Act as to a particular item are exhausted after the trademark owner's first authorized sale of that individual product." *Montblanc-Simplo GmbH v. Staples, Inc.*, 172 F. Supp. 2d 231, 236 (D. Mass. 2001), *vacated pursuant to settlement agreement*, 175 F. Supp. 2d 95 (D. Mass. 2001). This is true even if the second sale is without the mark owner's consent. *Nexxus Prods. Co. v. CVS New York, Inc.*, 188 F.R.D. 11, 15 (D. Mass. 1999). The underlying rationale stems from the proposition that the resale of *genuine* products does not confuse consumers and therefore is not a concern of the Lanham Act. *See John Paul Mitchell Sys. v. Pete-N-Larry's, Inc.*, 862 F. Supp. 1020, 1024 (W.D.N.Y. 1994).

However, gray market foreign goods that are "materially different" from those sold by an authorized domestic distributor are not deemed genuine and thus subject their seller to Lanham Act liability. *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 638 (1st Cir. 1992) ("[T]he Venezuelan chocolates purveyed by Casa Helvetia were not 'genuine' within the meaning of section 32 if they (a) were not authorized for sale in the United States and (b) differed materially from the authorized

(Italian-made) version."); *see also Iberia Foods Corp. v. Romero*, 150 F.3d 298, 302-303 (3d Cir. 1998), citing *id.* ("The test for whether an alleged infringer's products are genuine asks whether there are 'material differences' between the products sold by the trademark owner and those sold by the alleged infringer."). Omni seeks summary judgment in the first instance on the theory that only a "United States citizen having no common ownership or corporate affiliation with the foreign manufacturer of the product" can state a claim under the Lanham Act, regardless of whether "there are differences between the products authorized for sale in the United States and those not."[2] Def. Mot. Summ. J. at 5, 9. Omni derives this rule from the holdings of two appellate court decisions in other circuits that are more or less consistent with Omni's argument. *See NEC Elecs. v. Cal Circuit Abco*, 810 F.2d 1506 (9th Cir. 1987); *Weil Ceramics & Glass, Inc. v. Dash*, 878 F.2d 659 (3d Cir. 1989).

Even assuming that Omni correctly interprets the Ninth and Third Circuit holdings, they are inconsistent with the First Circuit's holding in *Nestle*, which is binding on this court and generally considered to be the leading case defining Lanham Act liability in the gray goods arena. In *Nestle*, the plaintiff was the Puerto Rican affiliate of a foreign manufacturer with an exclusive distribution agreement to sell

---

[2] Omni frames this argument in terms of "standing," but it is properly construed as one for failure to state a claim.

PERUGINA chocolates in Puerto Rico. The First Circuit found that the Venezuelan-made PERUGINA chocolates imported and sold by the defendant in Puerto Rico were materially different than those sold by Perugina's Puerto Rican distributor and therefore violated the trademark infringement and unfair competition provisions of the Lanham Act. It is clear from *Nestle* that the First Circuit does not recognize the "common control" exception to the Lanham Act on which Omni relies.

Moreover, in both of the cases from which Omni derives the purported exception, the foreign products at issue were *identical* to those authorized for sale in the United States and were thus non-infringing in the first place. *See Weil*, 878 F.2d at 668 n.11 ("[W]e premise our decision on the assumption that the porcelain imported by [defendant] was essentially identical to that imported by [plaintiff]."); *see also Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 753 F. Supp. 1240, 1246-1247 (D.N.J. 1991), *rev'd on other grounds*, *Ferrero U.S.A., Inc. v. Ozark Trading, Inc.*, 952 F.2d 44 (3d Cir. 1991) (concluding that *Weil* does not bar Lanham Act suits by domestic affiliates of foreign manufacturers if the competing goods materially differ). Because, as will be shown, there are material differences between the domestic product sold by Heraeus America and the foreign products sold by Omni, the motion for summary judgment based on a "common control exception" will be denied.

C. Trademark Infringement

To succeed on its Lanham Act claims, Heraeus America must establish that the Heraeus dental products Omni sells: (1) are not authorized for sale in the United States; and (2) are materially different from the authorized versions Heraeus America sells domestically. *Nestle*, 982 F.2d at 638. Omni does not dispute that its sale of the trademarked products is unauthorized. Thus, the parties' cross-motions for summary judgment center on whether the Heraeus products sold by Omni differ materially from those sold by Heraeus America. "Whether the fulcrum of plaintiff['s] complaint is perceived as section 32(1)(a), section 42, or section 43(a), liability necessarily turns on the existence *vel non* of material differences between the products of a sort likely to create consumer confusion." *Id.* at 640. "In suing under any of the three Lanham Trade-Mark Act provisions, a plaintiff need only show that a likelihood of confusion is in prospect; a showing of actual confusion is not required." *Id.* In gray goods cases, "a material difference between goods simultaneously sold in the same market under the same name creates a presumption of consumer confusion as a matter of law." *Id.* A material difference is "any difference between the registrant's product and the allegedly infringing gray good that consumers would likely consider to be relevant when purchasing a product." *Id.*

D. Materiality Standard Applied

Heraeus America alleges a number of differences between the Heraeus dental

11

products that it sells domestically and those sold by Omni.[3]

### 1. Composition

Heraeus America maintains that all of its domestic dental products use different resin than those manufactured for sale abroad and thus differ materially in their chemical composition. Heraeus America also argues that the syringe delivery mechanism in its domestic CHARISMA products differs from those in the same products intended for sale in other parts of the world. The only authority offered to support these assertions is the deposition of Heraeus America's president, Perry Holden. Holden, however, did not claim personal knowledge of either of these supposed differences. When asked how he knew that the resin of the foreign and domestic products are made from different monomers, Holden responded: "Word of mouth." Because Heraeus America has not offered any admissible evidence to support its composition claims, the court will not factor them into its determination.

### 2. Quality Control

---

[3] In addition to those discussed, Heraeus America asserts that there is a material difference between the foreign and domestic products because Omni has failed to register as an importer of Class II medical devices and has failed to obtain clearance to sell the Heraeus dental products pursuant to 21 U.S.C. § 360. Failure to comply with these requirements can create a material difference between the authorized and the unauthorized products. *See Novartis Animal Health US, Inc. v. Abbeyvet Exp. Ltd.*, 409 F. Supp. 2d 264, 267 (S.D.N.Y 2005). However, Heraeus America has provided no admissible evidence of Omni's failure to register.

The Heraeus dental products sold by Heraeus America are imported directly from Heraeus Germany. Heraeus America tracks these products by item and batch number in the event a recall is ordered. Omni, on the other hand, receives its Heraeus products from wholesalers who have purchased them in foreign markets. Omni cannot verify where its wholesalers acquire the Heraeus products as they refuse to divulge their origins, claiming that the information is a trade secret. Accordingly, Omni is unable to track the dental products from their origin, does not know the conditions under which they were shipped and stored, or even whether the products were actually manufactured by Heraeus Germany. "[A] substantial variance in quality control . . . creates a presumption of consumer confusion as a matter of law." *Nestle*, 982 F.2d at 643; *see also Montblanc-Simplo* 172 F. Supp. 2d at 239-240 (serial numbers missing from foreign pens constituted a material difference because the trademark holder could not recall products in event of manufacturing error).

### 3. Packaging

Heraeus America's boxes are labeled in English and contain vibrant colors and modern, graphic designs. Omni's boxes lack such color and designs (and in the case of iBond, a box entirely). Many of the Omni boxes display prominent Chinese characters near the label, which are absent from the packaging of the authorized domestic products. A stark contrast in product appearance creates a risk of consumer

confusion as a matter of law. *See Nestle*, 982 F.2d at 643 (cosmetic differences in packaging of chocolates); *Original Appalachain Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 73 (2d Cir. 1987) (physically identical Cabbage Patch Kids dolls differed materially because imported dolls came with Spanish birth certificates and adoption papers, while dolls authorized for sale domestically included only English pedigrees).

### *4. Customer Service*

Heraeus America offers a technical assistance department and includes a domestic customer service email and telephone number on the box of each of its products. Omni does not employ a customer service staff to answer questions about its Heraeus products. The packaging of the Omni products contains contact information only for Heraeus Germany. Heraeus America also offers warranty coverage on the products it sells to authorized retailers, but does not offer coverage on Heraeus products not intended for sale in the United States. These variations in customer support and warranty coverage contribute to a finding of material differences between the foreign and domestic products. *See Nestle,* 982 F.2d at 639 n.7 ("[D]ifferences in, say, warranty protection or service commitments [ ] may well render products non-identical in the relevant Lanham Trade-Mark Act sense."); *Bose Corp. v. Ejaz*, 2012 WL 4052861, at *9 (D. Mass. Sept. 13, 2012) (one year difference in

warranty between domestic and foreign radio systems constituted material difference); *Fender Musical Instruments Corp. v. Unlimited Music Ctr., Inc.*, 1995 WL 241990, at *3 (D. Conn. Feb. 16, 1995) (foreign Fender guitars not covered by Fender warranty likely to create consumer confusion because they did not come with "services and guarantees that usually accompany such a sale").

In sum, given the relatively relaxed standard established by the First Circuit, Heraeus America has carried its burden on the issue of material differences.

E. Rebutting the Presumption of Consumer Confusion

The existence of material differences between foreign and domestic Heraeus dental products creates only a presumption of consumer confusion. Omni may rebut this presumption by presenting evidence that no confusion, in fact, exists. *See Nestle*, 982 F.2d at 641. Omni makes two principal arguments to support its assertion that dentists purchasing its products do not confuse them with those sold by Heraeus America: (1) that Omni gives notice in connection with its sales that it is not authorized to sell Heraeus dental products; and (2) that dentists are in fact aware of the differences between the authorized and un-authorized products.

A seller of gray market goods may rebut a presumption of consumer confusion with evidence of an effective disclaimer. *See Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.*, 832 F.2d 1311, 1315 (2d Cir. 1987) (In a trademark infringement

action, "the use of disclaimers [is] an adequate remedy when they are sufficient to avoid substantially the risk of consumer confusion."). "A disclaimer may be an appropriate remedy if it truthfully identifies the original manufacturer of a trademarked product while effectively disassociating the manufacturer/markholder from that product when used in a context that the markholder does not sponsor or approve." *Montblanc-Simplo*, 172 F. Supp. 2d at 245. "And in this context, disclaimers expressly declaring that the seller is 'not affiliated' with the trademark owner have been found to prevent consumer confusion." *Id.* (citing cases); *see also Home Box Office*, 832 F.2d at 1315 ("In many circumstance a disclaimer can avoid the problem of objectionable infringement by significantly reducing or eliminating consumer confusion by making clear the source of a product.").

Omni's "About Us" section of its website contains a statement that "Omni Dental is not affiliated with or an authorized dealer of any dental manufacturer of which product it sells, and can therefore offer you lower prices."[4] However, the disclaimer

---

[4] Since the filing of this lawsuit by Heraeus America, Omni has also included a "disclaimer of association" in the packaging of the Heraeus products it sells. The disclaimer notifies purchasers that Omni is not affiliated with Heraeus America, nor authorized to sell its products. It also states that the Heraeus dental products sold by Omni are manufactured by Heraeus Germany and "not physically or materially different in quality, composition and formulation" from those distributed by Heraeus America. The parties dispute whether this insert constitutes effective notice, but the court need not now make a determination. While an appropriate disclaimer might insulate a seller from future liability and obviate the need for injunctive relief, it does not absolve past

is not listed anywhere else on the site (such as the pages containing Heraeus products), nor does it appear in the print catalog. Thus, there is a dispute of fact as to how many potential dentists actually view the statement before purchasing Omni's Heraeus products and whether a reasonable dentist-viewer would understand the disclaimer as an arms-length repudiation of any association with Heraeus America (the distributor), as opposed to Heraeus Germany (the manufacturer). *See Montblanc-Simplo*, 172 F. Supp. 2d at 244.[5]

**Chapter 93A (Count IV)**

Like a Lanham Act claim, "the essential element of [an] action under the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2, 11, is that defendant's use of a mark caused confusion among customers as to the source of the plaintiff's product." *R.J. Toomey Co. v. Toomey*, 683 F. Supp. 873, 879 (D. Mass.

---

liability. Thus, Omni's disclaimer cannot serve as part of an affirmative defense to Heraeus America's claims of infringement prior to filing of this suit.

[5] Omni also argues that, unlike consumer goods purchased by the general public, the class of prospective purchasers here is comprised exclusively of dentists who are sophisticated buyers and know that Omni is not an authorized retailer of the dental products it re-sells. The evidence that Omni offers to support this assertion consists of eighteen affidavits from dentists professing an understanding of the distinction between Omni and Heraeus America. These, however, were produced after the discovery deadline had expired. The motion of Heraeus America to strike these ambush affidavits is ALLOWED and Omni's motion for summary judgment on the Lanham Act claims will be denied.

1988). A claim under Chapter 93A must meet the additional requirement that the "actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth." Mass. Gen. Laws ch. 93A, § 11. The defendant, however, bears the burden of proving that the "center of gravity of the circumstances that give rise to the claim" resides outside the Commonwealth. *Kuwaiti Danish Computer Co. v. Digital Equp. Corp.*, 438 Mass. 459, 470 (2003). Although Omni asserts in passing that its business has no connection to Boston, it has not addressed the issue in a Chapter 93A context. Consequently, Omni's motion for summary judgment on the Chapter 93A claim will be denied.[6] However, because Heraeus America has not shown the absence of a dispute of material fact as to its Lanham Act claims, its motion for summary judgment on its state law unfair competition claim will also be denied.

**Tariff Act of 1930 (Count III)**

The Tariff Act provides that "it shall be unlawful to import into the United States any merchandise of foreign manufacture if such merchandise [or packaging] . . . bears a trademark owned by a citizen of, or by a corporation or association created or

---

[6] The court notes that Chapter 93A "was not intended to authorize duplicative recoveries for the same wrong." *Costa v. Brait Builders Corp.*, 463 Mass. 65, 73 (2012). In this case, a damage award under Chapter 93A would replicate a Lanham Act damages recovery because it is based on the same infringing acts. *See Calimlim v. Foreign Ctr., Inc.*, 392 Mass. 228, 235 (1984).

organized within, the United States, and registered in the Patent and Trademark Office by a person domiciled in the United States . . . *and if a copy of the certificate of registration of such trademark is filed with the Secretary of the Treasury . . . .*" 19 U.S.C. § 1526(a) (emphasis added). Heraeus America argues that it has proved Omni imported trademarked Heraeus dental products and that "nothing more is required to establish liability under the Tariff Act." This is not accurate as a matter of law. The Act plainly states that the trademark must first be registered with the Secretary of Treasury. To comply with this requirement, a trademark owner seeking protection must record its marks with the U.S. Customs Service. *See* 19 C.F.R. § 133.0; *see also Shaw v. Rolex Watch U.S.A., Inc.*, 776 F. Supp. 128, 129 (S.D.N.Y. 1991) ("To employ Section 1526, the trademark owner must record the trademark with Customs."). The trademark owner's application must describe with particularity "any physical and material difference between the specific articles authorized for importation in the United States and those not so authorized" and provide evidence to support the claim. 19 C.F.R. § 133.2(e). Having failed to comply with these requirements, Heraeus America cannot now claim protection under the Tariff Act. Omni's motion for summary judgment on the Tariff Act claim will therefore be allowed.

## ORDER

For the foregoing reasons, Heraeus America's motion for summary judgment on

Counts I and II is <u>ALLOWED</u> in part.  Heraeus America's motion for summary judgment is <u>ALLOWED</u> as a matter of law as to the existence of material differences in the domestic and foreign product lines.  Heraeus America's motion for summary judgment on the issue of consumer confusion is <u>DENIED</u>.  Omni's motion for summary judgment on Counts I and II is <u>DENIED</u>.  Heraeus America's motion for summary judgment on Counts III and IV is <u>DENIED</u>. Omni's motion for summary judgment on Count III is <u>ALLOWED</u>.  Omni's motion for summary judgment on Count IV is <u>DENIED</u>. The Clerk will set the case for a trial by jury on Counts I and II limited to the issue of consumer confusion.  The court will hear the Chapter 93A claim separately as an equitable matter, reserving the issue of whether to seek an advisory verdict from the jury.

        SO ORDERED.

        /s/ Richard G. Stearns

        _____
        UNITED STATES DISTRICT JUDGE